UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Johnnie Jefferson,<br>    *Plaintiff*,<br>v.<br>United States of America,<br>    *Defendant*. | No. 3:23-cv-1520-MPS |

**RULING ON MOTION TO VACATE**

Under 28 U.S.C. § 2255, Johnnie Jefferson, *pro se*, seeks to set aside, vacate or correct his sentence to rectify "a fundamental miscarriage of justice to one who is actually innocent." ECF No. 1 at 14. For the reasons set forth below, I DENY his motion.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

I assume familiarity with the record in this case and set forth below only a brief summary of the background and the claim. *See United States v. Jefferson*, No. 3:13-cr-139-MPS-1.

On December 20, 2012, law enforcement interviewed Jefferson about October 10, 2012, the day Dawayne Cobb was murdered. *Id.*, ECF No. 89 at 4-5. Jefferson told the investigators that a few days before October 10, 2012 he decided that he was going to rob Cobb to make some quick money. ECF No. *Id.* at 5. On the morning of October 10, 2012, Jefferson met Trumaine Hearst and two others. *Id*. Jefferson told the group that he planned to rob Cobb. *Id*. Jefferson initially claimed that Hearst offered to help with the robbery and to supply a gun.[1] *Id*. at 7.

Later that day, Jefferson and Hearst met Cobb under the guise that their driver wanted to buy marijuana and got into Cobb's car. *United States v. Jefferson*, No. 3:13-cr-139, ECF No. 89 at 6. When Jefferson spoke the agreed upon code (asking Hearst whether he had a scale) for

---

[1] Hearst consistently claimed Jefferson supplied the gun and eventually Hearst admitted that he shot Cobb. 13-CR00139-MPS-2, ECF No. 71 at 7, 9. Consistent with Hearst's story about who supplied the gun, Jefferson now admits that he "gave his codefendant Trumain Hearst aka Man [a] handgun for protection." ECF No. 1 at 16.

1

Hearst to pull out the gun, Hearst pulled out a black semi-automatic handgun and pointed it at Cobb's side through the opening between the two front seats. *Id.* at 7; ECF No. 1 at 16. Jefferson took Cobb's marijuana supply and went through Cobb's front pockets. *United States v. Jefferson*, No. 3:13-cr-139, ECF No. 89 at 6. Jefferson told investigators that he got out of the car with Cobb's marijuana and headed toward a hole in a fence. *Id.* He heard two gunshots. *Id*. Hearst joined him, and they ran back to the car they came in. *Id.* Back in the basement of a nearby house, the group split the marijuana. *Id.*

Jefferson was arrested on December 20, 2012. *Id*. at 1. He pled guilty to 18 U.S.C §§ 2, 924(c) and 924(j)(1); *United States v. Jefferson*, No. 3:13cr139, ECF No. 129 at 28. At the change of plea hearing, Jefferson admitted under oath that he took the marijuana from Cobb against his will, at gunpoint, and that Hearst knowingly and intentionally caused Cobb's death through the use of a firearm. *Id.* ECF No. 129 at 26 – 27. Jefferson was sentenced to 264 months imprisonment and 5 years of supervised release. *Id.*

On March 12, 2020, Jefferson moved *pro se,* to reduce his sentence under the First Step Act. *United States v. Jefferson*, No. 3:13cr139, ECF No. 104. The Court denied the motion to reduce sentence because Jefferson was not convicted of an offense involving the distribution of cocaine. *Id.*, ECF No. 107. On July 26, 2021, Jefferson filed *pro se*, a petition for compassionate release under 18 U.S.C. § 3582(c). *Id.*, ECF No. 116. On August 12, 2022, Jefferson filed a second motion for sentence reduction through his lawyer. *Id.*, ECF No. 121. The Court denied the petition for compassionate release and the second motion for sentence reduction because Jefferson had not exhausted his administrative remedies and failed to demonstrate extraordinary and compelling circumstances. *Id.*, ECF No. 128. On November 15, 2023, Jefferson filed this

motion to vacate his sentence *pro se,* under 28 U.S.C. § 2255 and moved to appoint counsel. ECF No. 1, 5.

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2255(a)[2]

Section 2255 allows a convicted person held in federal custody to file a motion in the sentencing court to vacate, set aside, or correct a sentence. In particular, "[s]ection 2255 provides that a prisoner sentenced by a federal court may move to have that sentence vacated, set aside or corrected if he or she claims that the court, in sentencing him or her, violated the Constitution or the laws of the United States, improperly exercised jurisdiction, or sentenced him or her beyond the maximum time authorized by law." *Thai v. United States*, 391 F.3d 491, 493 (2d Cir. 2004).

Section "2255 review is narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted). In deciding a § 2255 motion, the court "may properly rely on [its] knowledge of the record and may permissibly forgo a full hearing …." *Puglisi v. United States*, 586 F.3d 209, 215 (2d Cir. 2009).

## III. DISCUSSION

### A. Causing Death through the Use of a Firearm – Felony Murder

Jefferson pled guilty to count one, causing death through use of a firearm – felony murder, in violation of Title 18, United States Code, Sections 924(c), 924(j)(1) and Section 2. *United States v. Jefferson*, No. 3:13cr139, ECF Nos. 10 at 1, 2; 50 at 1, and 129 at 28. Jefferson claims this Court should "correct a miscarriage of justice" because he is "actually innocent of use of a

---

[2] Because Jefferson is proceeding *pro se*, his petition is held to "less stringent standards than formal pleadings drafted by lawyers[.]" *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001). And I must liberally construe his papers to raise the strongest arguments that they suggest. *Id*.

3

firearm" and that the government failed to prove he "actively employ[ed] the firearm." ECF No. 1 at 14, 15.

### 1. 18 U.S.C. § 924(j) and Felony Murder

Jefferson pled guilty to aiding and abetting an armed robbery that resulted in his co-defendant's murdering Cobb. Section 924(j)(1) provides that "a person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall— (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life…" 18 U.S.C. § 924(j). Section 924(j)(1) incorporates violations of Section 924(c) and murder under Section 1111. Section 1111 encompasses the felony murder doctrine. *See United States v. Thomas,* 34 F.3d 44, 48 (2d Cir. 1994) (holding that a killing committed in the commission of a robbery satisfies the statute's intent requirement for a murder charge). Section 1111 provides that "murder is the unlawful killing of a human being with malice aforethought" and that "[e]very murder "committed in the perpetration of, or attempt to perpetrate, any ... robbery …. is murder in the first degree." 18 U.S.C. § 1111(a). "There are several ways in which the element of malice aforethought can be satisfied." *United States v. Thomas*, 34 F.3d 44, 48 (2d Cir. 1994). One way to satisfy the element of malice aforethought is if the killing "was committed in the commission of a robbery." *Id.* (citation modified). "The malice of the underlying robbery satisfies murder's malice requirement under 18 U.S.C. § 1111(a)." *United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) (summary order) (citation modified).

Whether Jefferson used or actively employed the gun is immaterial. Jefferson is responsible for Cobb's death because the facts support his robbery conviction and the facts show that Cobb's death occurred as a consequence of Jefferson's knowing and willful participation in

an armed robbery. He had "prior knowledge" that the gun would be used and an opportunity "to walk away" but instead chose to stay and complete the robbery. *United States v. Robinson*, 799 F.3d 196, 200-01 (2d Cir. 2015).

### 2. 18 U.S.C. § 924(c)

Section 924(c) makes it a crime to possess, use or carry a firearm "during and in relation to any crime of violence or drug trafficking crime."18 U.S.C. § 924(c). Jefferson decided a few days before October 10, 2012 "to rob Cobb in order to make some quick money." *United States v. Jefferson*, No. 3:13cr139, ECF No. 89 at 5. "[C]ompleted Hobbs Act robberies are categorically crimes of violence pursuant to section 924(c)(3)(A)." *United States v. McCoy*, 58 F.4th 72, 74 (2d Cir.), cert. denied, 144 S. Ct. 115, 217 L. Ed. 2d 34 (2023). Jefferson did not plead guilty to 18 U.S.C. § 1951 (Hobbs Act robbery) but the record provides sufficient proof to show that he violated § 1951. Section "924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." *Johnson v. United States*, 779 F.3d 125, 129 (2d Cir. 2015).

Jefferson admitted under oath that after he planned "to rob someone of marijuana," that he "took a jar filled with approximately two ounces of marijuana" from Cobb "against his will" and "at gunpoint." *United States v. Jefferson*, No. 3:13cr139, ECF No. 129 at 26. Jefferson also admitted that the offense affected commerce because it involved a marijuana transaction. *Id.* at 26-27; *See also* ECF No. 50 at 9. The record contains legally sufficient proof that Jefferson committed the predicate crime of robbery.

5

### 3. 18 U.S.C. § 2 – Aiding and Abetting

Jefferson also pled guilty to 18 U.S.C.A. § 2 – aiding and abetting. Under that provision, a defendant is held liable as a principal for aiding and abetting someone else to commit a crime. See 18 U.S.C. § 2(A) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Aiding and abetting is not a distinct crime, instead it "describes a defendant's role in the underlying offense." *Medunjanin v. United States*, 99 F.4th 129, 134 (2d Cir. 2024). A defendant is liable for aiding and abetting a violation of 18 U.S.C. § 924(c) if he "actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond v. United States*, 572 U.S. 65, 67 (2014).

The facts in the record are sufficient to establish aiding and abetting the § 924(c) violation. Jefferson actively participated in the robbery by calling Cobb to meet him and his co-defendant; by giving Hearst the gun; by establishing a code for when Hearst should draw the gun; and by taking the jar of marijuana from Cobb against his will. ECF No. 1 at 1. He actively participated in robbing Cobb with advance knowledge that Hearst would carry a gun during the robbery. Jefferson's declaration confirms his advance knowledge of the gun. He states that he "gave his codefendant Trumain Hearst aka Man [a] handgun for protection." ECF No. 1 at 16. Jefferson admits advance knowledge that the robbery would be armed.

The record also indicates that Jefferson had advance knowledge that Hearst would use the gun. Jefferson and Hearst agreed upon a code in advance of the robbery. The code ("did he have

the scale") prompted Hearst to "pull out the gun," to brandish and threaten Cobb with the gun.[3] ECF No. 1 at 16.

Because Jefferson admits to actively participating in the robbery with advance knowledge that Hearst would carry and use a gun during the robbery, he admits to aiding and abetting a violation of § 924(c). *See Rosemond v. United States*, 572 U.S. 65, 67 (2014). Jefferson is liable for aiding and abetting a violation of 18 U.S.C. § 924(c). It was not necessary for him to physically handle (use) the firearm or to actively employ the gun to be convicted.

## B. Jefferson's Plea was Knowing and Voluntary

Jefferson claims that if his lawyer or the Court had "informed [him] before entry [of his plea] of the active employment element required to be proven to constitute 'use' of a firearm causing death as charged in Count One … [he] would not have entered the plea of guilty …." ECF No. 1 at 15. He claims that his plea was not knowing and voluntary. *Id.*

Jefferson fails to consider the felony murder doctrine or his guilty plea to 18 U.S.C. § 2(A) and 924(j). *United States v. Jefferson*, No. 3:13cr139, ECF No. 50; *Id.*, ECF No. 129 at 25-27. As discussed above, it was not the government's burden to prove that Jefferson used or actively employed the gun. Under the felony murder doctrine, Jefferson is liable for Cobb's death because Cobb died in the course of an armed robbery that Jefferson planned and executed. 18 U.S.C. § 1111(a), *See supra United States v. Rivera*, 679 F. App'x 51, 55 (2d Cir. 2017) (summary order). Section 2 makes Jefferson liable as a principal for aiding and abetting Hearst to use and actively employ the gun during the robbery. Jefferson actively participated in the robbery and had advance knowledge that Hearst would carry and use the gun because he gave

---

[3] Jefferson asserts in his declaration that "[o]nce the gun was shown, Cobb gave them the weed with no problems." ECF No. 1 at 16.

Hearst the gun and devised a code to prompt Hearst to draw the gun. *See supra Rosemond v. United States*, 572 U.S. 65, 67 (2014); ECF No. 1 at 16.

Jefferson's claim focuses on the Supreme Court's holding that "use" requires active employment rather than mere possession. *Bailey v. United States*, 166 S.Ct. 501 (1995). Jefferson's reliance on *Bailey* is misplaced for the reasons I have already stated, *i.e.*, the law holds him responsible for Hearst's active employment of the gun. In any event, *Bailey* was superseded by statute in 1998; Congress amended § 924(c) "to cover possession as well as use." *Welch v. United States*, 136 S. Ct. 1257, 1267 (2016).

The government did not need to prove that Jefferson used or actively employed the gun. Accordingly, Jefferson did not need to be informed of use or active employment. Jefferson's lawyer was not required to explain or discuss Jefferson's use or active employment of the gun because the facts show that Hearst used and actively employed the gun. Similarly, the Court did not ask Jefferson about his use or active employment of the gun because proving that Jefferson used the gun was not part of the government's burden. The Court asked Jefferson whether it was "true that [his] co-defendant, Mr. Hearst, knowingly and intentionally caused the victim's death through the use of a firearm" and Jefferson admitted that it was true. *United States v. Jefferson*, No. 3:13cr139, ECF No. 129 at 27.

The Government and the Court informed Jefferson of all the elements of the charged crime during the change of plea hearing, ECF No. 129 at 23-25. The Government also explained the evidence it would introduce at trial to support each element, and the Court then canvassed Jefferson about the facts supporting each element. *Id.* at 25-27. In any event, the Court was "not required to make a ritual listing of the elements of a crime." *United States v. Miller*, 7 F. App'x 59, 61 (2d Cir. 2001). The Court asked Jefferson if he understood "the charges against [him]"

and Jefferson confirmed that he understood. *Id.*, ECF No. 129 at 6-7. Additionally, Jefferson affirmed that no one had made any promises, threats or forced him to plead guilty; he affirmed that he was "pleading guilty … of [his] own free will" and because he is, in fact, guilty. *Id.* at 17.

Jefferson's § 2255 motion is devoid of facts to support Jefferson's claim that his lawyer misinformed him about the essential elements of the crime. To the contrary, the plea agreement shows that Jefferson's lawyer informed him of the relevant elements. *United States v. Jefferson, No. 3:13cr139*, ECF No. 50 at 1, 8. It lists the elements to count one: causing death through the use of a firearm – Felony Murder, and Jefferson's lawyer attested that he has "thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms." *Id.* at 8. Jefferson affirmed his understanding by attesting that he "read [the] plea agreement letter and its attachment(s) … had ample time to discuss [the] agreement and its attachment(s) with counsel and that he fully understands and accepts it's terms." *Id.* Jefferson has not shown that his lawyer's performance fell below objective standards for reasonably effective representation. *See Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984).

There is nothing in the record that supports Jefferson's claim that his guilty plea was not knowing and voluntary. He was fully advised of the elements of the offense to which he was pleading guilty, and he acknowledged that he was entering a guilty plea of his own free will. Jefferson's claim that his guilty plea was not knowing or voluntary because he was misinformed of the essential elements of the crime, is without merit.

## C. Timeliness

The government argues that Jefferson's motion is untimely and that he is not entitled to equitable tolling. Jefferson argues that actual innocence provides a gateway through which he is entitled to bypass the limitations period and have his claims heard on their merits.

"A motion by a federal prisoner for postconviction relief under 28 U.S.C. § 2255 is subject to a one-year time limitation...." *Clay v. United States*, 537 U.S. 522, 524 (2003); *see* 28 U.S.C. § 2255(f). Absent exceptional circumstances, that one-year limitations period begins to run from "the date on which the judgment of conviction becomes final[.]" 28 U.S.C. § 2255(f)(1). When a direct appeal is not filed, the § 2255(f)(1) limitations period begins to run upon the expiration of the period for filing that appeal. See *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir.2005) ("[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."). Jefferson did not file an appeal.

Federal Rule of Appellate Procedure 4(b)(1)(A)(i) requires that the notice of appeal in a criminal case be filed within fourteen days of entry of judgment. Jefferson's judgment was entered on June 24, 2015. *United States v. Jefferson*, No. 3:13cr139, ECF No. 92. Jefferson's judgment of conviction became final on July 8, 2015 (14 days later). Jefferson filed this § 2255 motion on November 15, 2023, more than eight years after his conviction became final. Jefferson does not claim extraordinary circumstances prevented his timely filing for federal habeas relief. *See Smith v. McGinnis*, 208 F.3d 13, 17-18 (2d Cir.2000) (holding that AEDPA's statute of limitations may be equitably tolled only in "rare and exceptional circumstance[s]" and only if "the party seeking equitable tolling [has] acted with reasonable diligence throughout the period he seeks to toll" (internal quotation marks omitted)). Instead, Jefferson claims actual innocence

(ECF No. 1 at 13). "'[A] convincing showing of actual innocence' could enable a prisoner to evade AEDPA's statute of limitations entirely." *Jones v. Hendrix*, 599 U.S. 465, 491 (2023) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)).

Actual innocence may allow "avoidance of AEDPA's one-year limitations period, … on the ground that a procedural limitation precluding a federal court from hearing the merits of a potentially innocent prisoner's habeas petition could result in a 'fundamental miscarriage of justice.'" *Jimenez v. Stanford*, 96 F.4th 164, 184–85 (2d Cir. 2024) (quoting) *McQuiggin v. Perkins*, 569 U.S. 383, 392-393 (2013). (citation omitted).[4] "To be credible," an actual innocence claim must be supported "with new reliable evidence … that was not presented at trial." *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir.2004) (quoting) *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Once it has been determined that the new evidence is reliable, *Schlup* unequivocally requires that reviewing courts consider [the] claim in light of the evidence in the record as a whole." *Doe v. Menefee*, 391 F.3d 147, 162 (2d Cir. 2004). The Court must "evaluate the testimony in light of the substance of other evidence, considering the potential motives to be untruthful that the witness may possess, corroboration or the lack thereof [and] internal consistency[.]" *Doe v. Menefee*, 391 F.3d 147, 164–65 (2d Cir. 2004).

"Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Jefferson claims that he is "actually innocent of use of a

---

[4] The Supreme Court "has never expressly held that a petitioner may qualify for habeas relief based solely on a showing of actual innocence." *Rivas v. Fischer*, 687 F.3d 514, 540 and n.34 (2d. Cir.2012); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). For purposes of this case, I assume that an innocence right exists.

firearm" causing the death of Cobb "during a drug trafficking crime or armed robbery" because "he did not actively employ the firearm[.]" ECF No. 1 at 15. He supports this claim with his statements, which he certified as true in a declaration attached to his motion to vacate.[5] ECF No. 1 at 1.

The statements in the declaration are consistent with statements Jefferson made during his change of plea hearing while under oath. *United States v. Jefferson*, No. 3:13cr139, ECF No. 129 at 24-27.  During the change of plea hearing, Jefferson admitted that he and Hearst agreed "to rob someone of marijuana," that he took a jar of marijuana from the victim "against his will," "at gun point," and that "Hearst knowingly and intentionally caused the victim's death through the use of a firearm." *Id.,* ECF No. 129 at 26-27. Further, in a stipulation of offense conduct attached to his plea agreement, Jefferson admitted that the taking of the marijuana "was carried out by means of actual threatened force and violence to [Cobb's] person." *Id*., ECF No. 50 at 9. In his declaration, Jefferson states that the victim "gave him the weed after being shown the gun" and that after Jefferson took the weed and left the car, he "heard gun shots from the direction of the incident." ECF No. 1 at 1 ¶ 3.

There is nothing new here, and as discussed above, the statements in Jefferson's declaration do not make him innocent of the offenses to which he has pled guilty. Jefferson was aware of the facts presented in his declaration at the time he pled guilty. At the change of plea hearing and in the plea agreement, Jefferson admitted that he reviewed and understood the essential elements of causing death through the use of a firearm – felony murder. *United States v. Jefferson*, No. 3:13cr139, ECF No. 50 at 1, ECF No. 129 at 12. Jefferson affirmed that he fully understood and accepted the terms of the plea agreement. *Id.*, ECF No. 50 at 8. The government

---

[5] See 28 U.S.C. § 1746.

explained what it would need to prove in order to convict Jefferson, including Hearst's knowingly and intentionally causing death through the use of a firearm. *Id.,* ECF No. 129 at 24-25.

The Court also asked Jefferson if he admitted guilt to individual elements. *Id.* at 26. Jefferson admitted that he took marijuana from someone at gunpoint against the person's will, and that Hearst knowingly and intentionally caused the victim's death through the use of a firearm. *Id.* at 27. Jefferson was aware of the facts that the motion to vacate currently relies on when he pled guilty. The one-year limitations period of a § 2255 motion runs from the date "the facts supporting the claim … could have been discovered through the exercise of due diligence," not when legal arguments are formulated. 28 U.S.C. § 2255(f)(4). Jefferson has not provided new evidence to support his § 2255 motion.

Even if Jefferson's declaration contained new evidence, his motion to vacate would be time barred because Jefferson did not present his claim with reasonable diligence. *See Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) ("To equitably toll the one-year limitations period, a petitioner must show that extraordinary circumstances prevented him from filing his petition on time, and he must have acted with reasonable diligence throughout the period he seeks to toll." (internal quotation omitted)). Jefferson had the facts necessary to assert this § 2255 claim of innocence in November 2014 but did not file the motion until November 15, 2023. He does not claim extraordinary circumstances delayed his claim or argue that he pursued the claim with reasonable diligence. Nine years elapsed between the time Jefferson became aware of the facts set forth in his declaration and when he asserted this § 2255 claim. Jefferson's claim is time barred.

### D. Procedural Default

The government asserted procedural default in its response to the motion to vacate. ECF No. 4 at 13. When a defendant has procedurally defaulted on a claim by failing to raise it on direct review, "he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." *DeJesus v. United States,* 161 F.3d 99, 102 (2d Cir.1998) (citing *Bousley v. United States,* 523 U.S. 614, 622 (1998). Jefferson does not point to any excuse for his failure to file an appeal. He contends only that "he is actually innocent of use of a firearm, where the government did not prove active employment." ECF No. 1 at 15. As discussed above, Jefferson is not actually innocent because he admitted under oath that had advance knowledge that Hearst was going to carry a gun and he implemented the use of that gun with a code word. *United States v. Jefferson*, No. 3:13cr139, ECF No. 89 at 5 ¶¶ 13-15; ECF No. 1 at 16.

Jefferson's motion to vacate is procedurally barred. The facts do not show that he is actually innocent. He cannot prove factual innocence or demonstrate that it is more likely than not that a reasonable juror would not have convicted him. Jefferson's claim is procedurally defaulted.

### E. Length of Sentence

Jefferson claims that his "264-month sentence is illegal." ECF 1 at 16. He contends that his 264-month sentence is illegal because it exceeds "the 10-year statutory maximum penalty for 21 U.S.C. 846" and 21 U.S.C. "841(a)(1), (b)(1)(D)." *Id.* Jefferson is mistaken. He did not plead to violations of 21 U.S.C. §§ 846 or 841. *See United States v. Jefferson*, No. 3:13cr139, ECF No. 50, and 129 at 28.

Jefferson was sentenced pursuant to violation of 18 U.S.C. § 2, 18 U.S.C. § 924(c) and § 924(j)(1). *Id.* See 18 U.S.C. § 2. Section 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence" … (iii) if the firearm is discharged, be sentenced to a term of imprisonment of *not less* than 10 years" "in addition to the punishment provided for such crime" of violence. 18 U.S.C. § 924(c) (emphasis added). Pursuant to 18 U.S.C. § 924(c)(1)(A), the sentence imposed had to be more than 10 years and, as I told Jefferson in the change of plea hearing, § 924(j) allows "imprisonment for as much as life." *United States v. Jefferson*, No. 3:13cr139, ECF No. 129 at 18. Jefferson's sentence is within the statutory range prescribed by 18 U.S.C. § 924(c) and § 924(j)(1). It is not an "extreme" sentence or "grossly disproportionate" to the offenses of robbery or death by a firearm. *See Harmelin v. Michigan*, 501 U.S. 957, 959 (1991). Jefferson's illegal sentence claim does not warrant relief.

### F. A Hearing is not Warranted and Appointment of Counsel is not Justified

Section 2255 requires a hearing to resolve disputed issues of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the plaintiff] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). As discussed above, Jefferson does not claim facts or controverted issues that would entitle him to relief.

I also deny Jefferson's motion for appointment of counsel. The Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Although the Criminal Justice Act permits the appointment of counsel in collateral attack proceedings for financially

eligible petitioners when "the interests of justice so require," 18 U.S.C. § 3006A(a)(2)(B), they do not in this case.

## IV. CONCLUSION

For the reasons above, I DENY the Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 1) and the Motion to Appoint Counsel. ECF No. 5.

IT IS SO ORDERED.

/s/Michael P. Shea<br>Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
       August  21 , 2025